Good morning, Your Honors. May it please this Court in opposing counsel, my name is Al Lerner. I practice in Kalispell, Montana, and I represent Michael Burton in this case. This is a bad faith case against State Farm. The district court dismissed all of my client's claims based on two summary orders. Since this is an appeal basically from summary judgment, the facts must be viewed most favorably to my client, and all reasonable inferences which support his case must be given to him. Now, the facts in this case are extensive. I don't know whether I'm going to have time to go through them all. They are set out greatly in our briefs. But briefly, Michael Burton was severely injured in an automobile wreck, which occurred on October 12, 1993. He was a rear seat passenger in a car which contained three other occupants, and State Farm insured pageant hit that car with his van. Several other people were also injured. Yes, and I was getting to that. Bonnie, who was the driver of the car, was killed. Derek, Bonnie's husband, sustained slight physical injury, and Heather Verjean sustained more serious injury, but not as bad as Burton's. Burton sustained cervical avulsion to his nerve roots and his neck, sustained back problems, neck problems, peritoneal and genital problems. His shoulder was severely injured and his nervous system was injured, his brachial plexus was injured, and the most serious injury was loss of the use of his right dominant arm in a 21-year-old man. And there's a lot of serious injuries here. There's no doubt about that, death, you know, unfortunately, terrible injuries. Very serious injuries with inadequate. He only had $300,000 of total insurance policy. With $100,000 per person. Per person. Yes. Correct. And the big question was how is that going to be explained? Well, Your Honor, there's only – that's a jury question, and I'll get right to that unless we're going – unless this Court has questions on the facts. If Judge Malloy wrote – That's the heart of your claim is, right, is that they – is that when your client, Mr. Burton, received – made an offer to settle for – Policy limits. Dollar policy limits. Yes. And the insurance company didn't take it. Yes. That that was basically – that's the heart of your claim. That's one of the – It's a predicate for – That's one of the parts of our claims. That's one of the parts of the first party-assigned bad faith claims, Your Honor. There are actually three predicates for that. Number one, they didn't investigate adequately to determine whether or not to accept Burton's offer. They didn't investigate Heather's claim, Heather Verjean's claim, or Derrick's claim to determine what the damages are. In fact, in their development report of December 10th, 1993, they found that Derrick's claim was only worth like $10,000 or $12,000. So our claim is this from a first party-assigned perspective. It would have been more reasonable for them to accept Burton's claim, especially since he was the only one who offered any protection at all for patent. Now, we're talking about a 1993 – Didn't this demand go out fairly soon? This demand went – The accident? This demand went out December 23rd, 1993. The accident occurred October 12th, 1993. How many – about 60 days? About 60 days. Regardless, at that time, it was clear. And it's your position that State Farm had ample time to assess, to investigate everything and to come to a fair assessment of everybody's potential injuries and damages? The offer remained open until March 11th, 1994, or for five months. So we're not just talking about a two-month offer here. We're talking about a five-month offer. Additionally, this Court should be aware that under Montana law, which existed in 1993, and we're talking about the Judiman case and the Thompson case, which are cited in our briefs, in order to make an offer to settle a case, you had to require – you had to also give an offer to release the insured. Other than that, there was no offer of settlement as a matter of law. This is what the Montana Supreme Court relied on in the Waters case and the Ridley case in stating that the insured had a legal – had a reasonable basis in law or fact for denying a claim based on previous Montana law. And if you look at Clout, which I don't know whether I cited Clout in my brief, but it's the standard case in Montana, and you look at the Foe decision and EEOT, which is cited in my brief from Judge Siebel – now Judge Siebel, you'll see that the law is the law that applied at the time to the claim. So Burton was the only guy to ever make an offer. Padgett never got a release from Derrick, never got a release from the estate of Bonnie, never got a release from Verjean. No one else offered to release Padgett. So here's the situation. We have a kid, 21 years old, with his arm gun, his right arm gun, his dominant arm. I mean, minimum, let's talk about the most serious injury. It's obvious that claim exceeds $100,000 and is a very, very dangerous claim. You never know how it's going to turn out. That's a $100,000 claim, too. That's more than $100,000. That's clear. Michael Burton's claim was more than $100,000. It's questionable whether or not Heather Verjean's claim and or Derrick's claim put together is more than one policy limit. Yes, Your Honor? The current suggester, I think in December of 1993, found that with $16,000 in specials for Burton, his claim was worth $50,000. Right. Is that bad faith? In and of itself. I don't believe that was bad faith in and of itself. I believe the bad faith was the failure to investigate. I think what you're here on is an appeal from two orders, two types of orders. One is a dismissal of your complaints as to several causes of action on the grounds of the statute of limitations. And on preemption. It is motion for summary judgment on the grounds that no reasonable person could have found anything but that State Farm acted reasonably. Correct. Up to now, we've only been discussing the latter. Correct. Suppose we discuss the former. Why doesn't the statute of limitations as to all the cause of action which you claimed with exception of the first-party breach of contract case and the third-party UPTA case, why doesn't the statute start running when your offer expires in March of 1994 whilst you filed in June of 2000? Yes. Outside of any conceivable statute, right? No. No? Is it told or does it not start running or what's going on? Well, Your Honor, in order to have a – let's take this from a first-party standpoint and a third-party standpoint because they're two different – they're two different statutes and they're two different types of claim. From a first-party standpoint, the assigned first-party claim that's assigned to Burton. Yes. And we're talking about Paget's claim under 33-18242 as a first-party claim. But that gives a cause of action to an insurer, quote, for actual damages caused by the insurer's violation of, and there are all sorts of sections there, but the two I'm concerned with are subsections 4 and 6 of 33-18201, which is our primary data-based statute. I think the operative language is caused by. I mean, in order to have a cause of action here, it's like there's breach, there's duty, there's causation, and there's damages. In order to have a cause of action for an insurer rejecting a reasonable settlement offer, in order to know what damages were even caused by that, you have to have a judgment either in excess of the policy limits or a settlement or some obligation in excess. Because if not, if the insurer is defending and continues to defend under its contractual duty to defend and gets the result, because you never know what's going to happen in these cases regardless of what, but it gets the result of less than policy limits, where's the breach? Why would any damages by an insurer, a failure to accept an offer, be a breach if they got a judgment of less than policy limits? But Padgett, when the claim was not released, Burton's claim was not released as to him, for a payment of $100,000, claimed damages right away, emotional distress. Well, but the emotional distress, the question is what caused the emotional distress, Your Honor, and this is what I. The emotional distress is that there's a cause, there's a suit out there that's going to take my house away. I respectfully disagree. I think that in order to know what the cause of the emotional distress is, you have to find out how the suit turns out. And it's for this reason. Because. You're getting up late at night wondering if you're going to lose your house because of an excess judgment, there's an emotional distress? Boy, I assure you, you don't represent Padgett, do you? No, not at all. But I do want to say, Your Honor, that regarding causation of damages, there's an emotional distress. From Padgett's standpoint, unless Padgett incurs an excess obligation, let's say the insurer goes ahead and gets a judgment of under $100,000, then Padgett's emotional distress is caused by his contractual obligations with the insurer under the insurance policy. It's not caused by a breach of duty by the insurer for failure to accept a reasonable settlement offer. And under these circumstances, how can you hold the insurer liable if the insurer gets a judgment of under policy limits offer? Why would the breach of duty there be a proximate cause of damage to Padgett? Because there would be no breach of duty. If they went on the claim, Padgett doesn't have an excess judgment against him or an excess settlement against him, and the insurer has done exactly what it said it would do under the contract, and it would keep its right to control the litigation and defend. And so, therefore, if we're going to have causation as an element. Do you have a case that tells us that the statute of limitations in Idaho doesn't start running on the assigned first party claim until there's an excess judgment or? No. We have no case in Montana, Your Honor. This is a Montana case. This is a, I know. But we do have a case that I think this Court ought to look at, and that is, I think the Montana Supreme Court has indicated. In fact, there are some other cases that indicate that on a third party claim,  in a minute. But we do have a case that I think more or less does state this principle. And this case is Perez v. Safeco. And the Montana Supreme Court quoted Wendt, Alan Wendt, on insurance claims with approval in that case, and basically stated, following an insurance breach of his duty to settle, the only condition precedent to a cause of action is damages. There is no logical reason why those damages must take the form of an excess judgment as opposed to a reasonable settlement in excess of policy limits. Now, the point of the matter is, Your Honor, I believe that it's clear that causation is a part of an element of this cause of action. What's the name of that case again? This is Perez v. Safeco. It's cited in our briefs. I could find the citation if you want, Your Honor. I've got P-E-R-I-S. Right. And it was actually a certified question from this Court. A lot of these cases are. But anyway, Your Honor, it's our position that the cause is necessary, and the only way to determine whether the cause was from a breach of the insurer's duty is if an excess obligation is incurred by the insurant. So that would be the case, I believe, under Montana law, which in a first-party situation, because they're completely different. Not all of the first-party claims were dismissed on statute of limitations, were they?  Some were dismissed on preemption. I'd like to discuss that. Can I quickly say that I believe the third-party statute of limitations case has been resolved by O'Connor, which is a brand-new case from the Montana Supreme Court? My question was directed at first-party. Okay. No, some of the first-party claims were dismissed on preemption. We argue that the preemption statute, which is 3318-242, I believe, 3. It's either 3 or 5. I think it's 3. It is 3. It was unconstitutional as a denial of equal protection. We argued a couple other arguments on that. We argued under the fundamental right test. We argued under the rational relations test on equal protection. We also argued that the statute does not apply to a defense of an insurance claim, but rather applies just to an insurance claim. And on that question very quickly, Your Honor, I'd like to point out that in 1986, the Montana Supreme Court decided Butte. I'm going to find the case real quick. Decided Butte Community Union v. Lewis. In that case, the Court held that all rights mentioned in Article II of the Montana Constitution, all rights mentioned in that are fundamental rights. This isn't just from Justice Nelson's concurring opinion in Klaus, which is a convenient statement of the Montana jurisprudence on that issue. The right to equal protection is a fundamental right that's specifically mentioned in Section 4 of the Montana Constitution. As such, it should have been evaluated under the strict scrutiny test of a compelling governmental interest. And I don't think it holds water under that, this discrimination between insurers and claimants. So I think Judge Malloy erred in that. A fundamental right invokes scruples. I mean, there's no suspect class here. There doesn't have to be a suspect class under Montana jurisprudence. According to the cases cited in my brief, and I've cited about, cited a bunch of them, going back to 1986, if a right is mentioned specifically in Article II of the Montana Constitution, which is our Declaration of Individual Rights, it is per se a fundamental right, per se, subject to the strictest scrutiny. Equal protection is a right mentioned in subsection 4. And that's the right to be free from disparate treatment and unequal treatment and discrimination of any type. What discrimination were you subject to? The discrimination here is that people who are injured by insurance bad faith, okay, or by breaches of the statute, insurance, okay, only have three causes of action under the Montana law. They have a cause of action for breach of contract. They have a cause of action for fraud. And then they have a cause of action for violation of the statutory tort itself. However, a claimant who's injured has all of his previous common law causes of action. That's the discrimination between claimants and you find no governmental interest which vindicates that. I find no compelling governmental interest which vindicates that discrimination. No, Your Honor. There may be a rational interest, as Judge Malloy pointed out, but the question is whether or not he applied the correct test. I'd like to sum up rather quickly on the O'Connor. First of all, I want to say on the reasonableness question, the rehearing order in Shilhannock answers that question. We must go back. There are enough facts here for a jury to decide for my client. And it is that. It's really under the Montana Supreme Court that is the law under Shilhannock, the standard to be applied here for a bad faith. We apply Federal rules of civil procedure 56. Yes, but we're not dealing with a Federal rule here. We're dealing with a substantive rule which results from the defense. I'm aware of the procedural substantive difference, of course, Your Honor. But we're dealing with a rule under the Montana statute and under Montana jurisprudence which provides a defense to insurers if they acted reasonably, i.e., a reasonable basis of law and fact in the case. Counsel, one question. Yes. You dealt with your theory as to why the statute of limitations did not commence until a settlement or an excess judgment is entered into. On a first-party case. First-party case. Yes. Tell me why, as to the third-party claims for common law bad faith failure to settle, the assigned first-party UPTA case, and the emotional distress which Burton had immediately when his settlement demand was turned down in March of 1994, why didn't the statute start running then? Okay. Let's discuss Burton's common law claim for bad faith first. His common law claim for bad faith, I think, is covered by the recent Montana Supreme Court decision in O'Connor, which was also a certified question from this Court. O'Connor held in a workers' comp situation that the particular issue had to either be adjudicated or settled for common law bad faith to accrue, for the statute to accrue under common law, not under a 3318-242 case for the claimant. And in a negligence case, unlike a workers' compensation case, Your Honor, the you can't have successive judgments. You can only have one judgment for all the damages. So Burton's common law case for bad faith clearly didn't accrue until the case was resolved in September of 1999 at the earliest, and it was filed on June 7, 2000. So clearly we were within the three-year statute set forth by Brewington. So that's why the third-party case is timely. Now, as far as emotional distress goes, I believe the same principles ought to carry forward as I've just discussed on bad faith, although I'm not sure under SACO whether that is correct. But if it's not correct, Your Honor, then the emotional stress continued until Burton's case was settled, and at least for three years back, three years back, for the continuing conduct of State Farm in not negotiating a settlement of Burton's case back to 19- Kennedy. That's a claim you make for the first time in appeal. No. I've discussed that in my briefs. Well, in the briefs, yeah, but you didn't discuss it at the trial court. I'm fairly sure I did, but maybe I didn't. I'm not sure. I think I did. I noted that it was not made mention of in the trial court. Not in the order, but I think it was in the briefs. Your Honor, I don't think I'd better go any further because of time. I'd like to save a little for a fruit bottle. Thank you. May it please the Court. My name is Brad Luck. I'm with the law firm of Garlington Lawn & Robinson in Missoula, Montana, representing State Farm Mutual Automobile Insurance Company. Taking the lead from the questions from the Court, with the Court's permission, I'd like to take just a moment and focus on a couple of pivotal basic observations that I believe underscore the propriety of affirming the entire dismissal of this case. This is a situation where Chief Judge Malloy thoughtfully considered the hundreds of pages of briefing and documents that were presented to him and had a very rigorous and interactive hearing. He concluded after reviewing the information that the material facts were few and none were in dispute. He also concluded that all the allegations of wrongdoing throughout the complaint and throughout all the causes of action occurred in 1993 and 1994. Finally, he concluded that there is one central issue in this case, and that is whether it was reasonable for State Farm to deny the demand for settlement within policy limits from Mr. Burton and proceed accordingly. The Court reviewed the few important and pivotal facts finding as the Court has indicated that there were significant injuries to a number of individuals, that the claim handling process continued over a short period of time, a handful of months. The evaluations, as new information came in, kept going up and up and up. And in response to the questions from the Court, the carrier was only in a position to evaluate based on information it had received. It continued. Why? Why couldn't the duty of a carrier in defending its insured is not to sit in the office and receive things. It's to investigate. That's what Egan v. Omaha said in California. And I imagine the same rule applies in Montana. I mean, when you don't get the authorizations for medical records from the plaintiff's attorney, shouldn't you be shipping him authorizations saying, please sign, and if you don't get these signatures, we cannot fully evaluate your claim, et cetera, et cetera, et cetera? I think in the situation as we are presented here, Your Honor, with the four claims and the development of information, everyone very early on represented by counsel, everyone early on, counsel advises that they will be presenting information. The requests are going back and forth, and we're talking about a very short time frame. At some point in time, yes, I think that might have been one of the things that could have been done. And as this Court said in the Trout case, we need to judge the reasonableness on the basis of information at the time, not with 20-20 hindsight. And inherent in the findings of Chief Judge Malloy is that different things could have been done at different times, but taking it as a whole, with all of the factual information that we have in the development of all four claims, the process of evaluating as information came in and quickly interpleading the funds, taking away all interest of State Farm in the resolution and allowing the parties to settle among themselves on the disposition was reasonable as a matter of law. Well, you say taking it as a whole. Isn't that exactly what a jury should do based on expert testimony of people in the industry? I mean, here you have, in December of 1993, one of your own claims adjusters finds this case is worth $50,000 or $16,000 of meds. Right? Yes, sir. $16,000 of meds is a lot of money, even in Montana. Then the next thing you have is a report in February of 1994 from a neurosurgeon at the University of Washington which says that this young man is two months out after post-op and he does not have, nor will he have, full use of his right upper extremity. Twenty-one-year-old man, permanent loss of use of the right arm. Doesn't that send a signal to the insurance company or a passenger in the automobile that this is a $100,000 case? Your Honor, at the same time, the information was that we have a dead 21-year-old woman who had a husband with his own claim as a result of that. Her family was represented by a separate counsel, and in Montana we have a pretty wide-open emotional distress independent actions. We have the other gal that was in Bonnie or Virginia, and the information that was developed in the file at that same time was that she had neurological problems. She's 21 years old, had lost feeling in the side of her breast and had been in the hospital for eight days. Kennedy, I'm sorry to hear from a jury verdict that found that you were reasonable. We have, of course, a motion for summary judgment that says that no reasonable trier of fact could find anything but your handling was reasonable, contrary to the two expert witnesses of use by the plaintiff, former State Farm people. Correct? It is correct that two former State Farm people filed affidavits. It's also correct, Your Honor, that if we take all four of these claims at the same time and judge based on the information that was presented, it was reasonable. And as to the standard, this is no different than the court said in the Francesi case with the federal courts in Montana have cited over the years. A carrier can be found reasonable as a matter of law in making a decision to deny a claim, even if it's later determined that it is payable, if there was a genuine issue at that time. And this Court said in the Trout case, as I indicated previously, you can't use the benefit of 20-20 hindsight. There are different and alternative approaches, and you have to judge it based on the information at the time. And the Montana Supreme Court has indicated that generally, just as California did, and this Court has construed on several occasions finding reasonable claims, handling as a matter of law, the Montana Court says generally that's a question of fact. And then in all the cases, in several cases that have followed that, primarily the Waters case, it said this trier of fact rule is not necessary where the underlying basis of law is based on a legal conclusion. And what Judge Malloy found was with no facts at issue in relation to the handling of the claim, the sole issue being was it reasonable to not settle the demand provided by Mr. Burton,  And this Court, in the Minnesota Mutual case, found that interpleading funds when there were disputed claims to the proceeds was reasonable as a matter of law and affirmed summary judgment on the implied covenant of good faith and fair dealing, negligence, and on the contract. Even if there are no facts in issue, and I don't doubt Judge Malloy in that, aren't the inferences from the facts in the context of the expert opinion adduced by the plaintiff in conflict? If that were the rule, Your Honor, where there were no facts at issue and you can conclude reasonableness as a matter of law, you'd never, ever have summary disposition of an unfair claims practice case, because I can guarantee you there's always an expert that will file an affidavit that indicate that the conduct. One test. Two expert declarations before Judge Malloy? Not at the time, Your Honor. We didn't think it was necessary. Judge Malloy looked at the same facts. I mean, one telling aspect of this, Your Honor, and why we can't allow just the filing of an expert test, an expert affidavit to overrule a solid analysis by a trial court is that, one, you can always get an expert affidavit, and, two, the judge looked at exactly the same facts. And Judge Malloy found that those exact facts were reasonable, and the language and characterization used by these experts is just what you'd expect that you'd be seeing. But Judge Malloy, with all due respect, was not sitting in a trial. He was sitting on a motion for summary judgment. I understand, Your Honor, and if we take that concept one step further, again, recalling that this Court did that very thing in the Minnesota Mutual case, allowed as a matter of law the filing of an interpleader as reasonable claims handling. If we take that one step further and we indicate that their ---- But the interpleader wasn't filed while the offer was outstanding. It was filed later. The offer had expired. Yes, Your Honor, that's true. You didn't file. In February, when you got Dr. Cleon's report from the University of Washington showing this man what would at best only restore partial function to his right arm, you didn't file the interpleader then. I don't think there was any question by that point that there were significant claims. There were four significant claims, and within a few weeks of that, in fact, there were demands of, depending on how you interpret them, from $450,000 to $550,000 for that $300,000 in coverage. There was no reason to file the interpleader right away. And, Your Honor, back to ---- just to finish my thought in response to your question, if, in fact, when there are no facts at issue and the underlying central issue is should they have paid it over, was it reasonable to interplead, would the single jury question be, members of the jury, was interpleader reasonable or not? My conclusion and my argument would be, just as Judge Malloy felt, that's a legal conclusion and he can find reasonableness as a matter of law with no facts at issue on the basis of that legal conclusion, and that's exactly what the Montana Supreme Court allowed in the Waters case and has consistently indicated is appropriate. There are certain circumstances where trial is necessary, but if we're looking at a legal conclusion, was it appropriate as a matter of law, it's appropriate to have the court make that interpleader. After you deposited the money into the court, the $300,000, was State Farm ever discharged from any future liability? There was no additional order. What State Farm did, and I think it's important also to the statute of limitations issues, State Farm paid the money in and took no further claims handling activities in terms of participating. It allowed the parties, and in fact, within a couple of months the parties stipulated, settled on the disposition and that was approved by the district court. State Farm, and that's why it was important But State Farm never obtained a discharge in that interpleader proceeding? No, Your Honor. Of any claims that the claimants might have? No. As a matter of fact, and this is important in discussing the statute of limitations issues, there are several letters that we've pointed out in the record, and I can give you the numbers of those pages, but there are several letters in 1994 and 1995 where the counsel for first Mr. Padgett and then Mr. Burton make it clear that they believe that they've already been damaged, that there's liability for the excess, and they were already planning the threat in 1994 of a consent judgment and the assignment of all of the rights. And that's so pivotal to this finding of Judge Malloy that everything occurred within 1993 and 1994. There was claimed damage at the time, and at that point in time, from that point forward in response to your question, State Farm did nothing in relation to the claim to give rise to any further causes of action. This underscores both the reasonableness and the statute of limitations, a cruel situation where in the Montana Poll case, the first line from this court was, a little bit of knowledge can be a dangerous thing, and it's clear from the record of this case that they had that knowledge at that time. My fundamental point is that we do believe that reasonableness can be found as a matter of law, just as this court did in Minnesota Mutual, and virtually every cause of action in the complaint can be dismissed on that basis, and as this court has the ability to affirm a denial on any grounds supportable in the record. In addition, Your Honor, your point, I think, with Mr. Lerner was exactly right. Virtually every count in the complaint can be dismissed on the statute of limitations except the contract claim. That's an eight-year statute of limitations, and the contract claim can clearly be dismissed on the basis of reasonable claim handling. So there are alternate routes per cause of action, and several of the causes of action The third-party statutory bad faith claim can be dismissed on statute of limitations, correct? Yes, it can, and I'd like to explain why I believe that's the case with this modification in the law. But first, it could be dismissed on reasonableness. The statute, both of them could, both third-party claims could be dismissed on reasonableness. The statute says that third-party statutory claims can only, the time begins to run when there is a judgment or a settlement. It appears that we've, at least in the workers' compensation context, and for argument's sake in the common law context, we've applied that to third-party common law cases. But I'd ask the Court to look at Ridley, Waters, and the O'Connor concurring opinion, and we see that the Supreme Court has said what is a settlement and what is the underlying claim is not finally defined. And in common law claim situations, appears to depend on the circumstances. I would submit to the Court that the sole issue in this, in the underlying problem was what do we do with Mr. Padgett's limits? And what State Farm did is they instituted the action and paid those limits into court and gave up all rights to that, and the parties ultimately settled the disposition. In the Waters ---- I think it's sometime between either when the interpleader was filed or when the disposition was made by settlement by the parties or the court approved it, and I say that for this reason. In the Ridley and Waters cases, with some help from this Court in the Carlson case, the Montana Supreme Court said that for 242 purposes, settling the disposition settlement means an enforceable right. And in Waters, they said the payment of a limit without a release would be considered a settlement. And what I'm saying is the underlying ---- it's in the Waters case. A settlement of Mr. Padgett's rights, if they get $300,000, all that does is fund an excess lawsuit. I'm only speaking, Your Honor, in relation to the condition precedent of filing a third party case, because they've defined a settlement for 242 purposes as an enforceable payment that you can enforce. And that's exactly what happened. I think it happened when there was an enforceable payment that could be enforced by each one of the claimants, including Mr. Burton, when the State Farm gave up all of its rights and interpled the money. I think by the definition in Waters where they said a settlement for 242 purposes is nothing more than the payment ---- You take your money, you're a stakeholder, you have this money, and, you know, multiple people are making claims to that money and you say, I need some protection here. That's a good point. I'm going to take this money and I'm going to give it to the court. This is your money. I don't care what happens to it. You guys figure out what's going to happen to it. I'm washing my hands and I'm walking away. That's a very good point. That's what you said State Farm said. That's a very good point because if you read ---- How could that possibly be a settlement? Well, we've got to do this within the ---- We've got to do this in the ---- State Farm, it's not a settlement. Under typical settlement considerations, I would say that's correct. But I prefaced my comments. I'm speaking on behalf of what the Montana Supreme Court said. In terms of definitions under 242, which creates the condition precedent, that would be considered a settlement. It doesn't relieve, it's not the settlement in the context of releasing Padgett. The court, if you read, Your Honor, Ridley and Waters indicate there are several settlements in the course of payments being made in a common law negligence case. All I'm saying is that court has indicated on the basis of its definitions that that would be an interim settlement and I believe it would be sufficient. So what could Mr. Padgett do? What is he going to collect? How is he going to collect the money? Mr. Padgett, Your Honor? Yes. When the act of State Farm put the money in the court. He's got to get a judgment against them. They might interplay or have a settlement. In the interpleader ---- I'm sorry, Your Honor. In the interpleader situation, Mr. Padgett's policy limits were paid in. The four claimants to that stipulated to the disposition of those funds. There was no release. If I could just touch on a couple of other things. I don't think the third-party common law case and the third-party statutory case, both are subject to the same defense and can be dismissed on the basis of reasonableness. The constitutional claim, back to the other statute of limitations on the first party statute of limitations. Montana law defines damages by statute as detriment caused by the act of another. Judge Malloy found that, consistent with section 242, the first-party unfair claims practice case occurred in 1993 and 1994 when the bad actions occurred. The detriment was caused at that point. Montana does not have a damage rule that requires all damage to be in place and indicates that if any damage is present, that the cause of action is complete and, therefore, the first-party cause of action could be dismissed both on reasonableness and on the statute of limitations. In relation to the constitutional issue, we believe that the court doesn't need to reach that. Both the application of the statute of limitations and reasonableness would negate every one of those claims. And the fact of the matter is, if we look at the Henry case, which is cited in our brief, it directly contradicts the statement of counsel in relation to the level of scrutiny. This is a rational basis level of scrutiny. And as Judge Malloy indicated, the Montana Supreme Court has been very clear in relation to the constitutionality of the legislature modifying common law actions, and that's what occurred in section 242. What's the name of that case that says rational basis rather than strict scrutiny? The Henry case, Your Honor. Henry. It refers to the Butte Hospital case and finds a rational basis. All right. Thank you. And we call the Court's attention to the Meach case, which specifically says that there is no vested right to a common law action and legislation negating certain common law actions is appropriate and supports the constitutionality of the legislature. One final point, Your Honor. You mentioned the Paris case, and the Paris case is very important, but I think it supports so many of the claims and arguments that are being made by State Farm in this case. First of all, it indicates that the statute 242 allowing these actions will be construed according to its terms. And in relation to the first party situation, it indicates that the first party claim can be brought at any time. All that's necessary is some sort of damage. With that, Your Honor, we would request that the dismissal of all the claims be affirmed on any of the multiple grounds that are appropriate. We do believe that the filing of the interpleader under the circumstances was reasonable as a matter of law, and that several of the claims, all but the contract claim, could be dismissed under statute of limitations. Thank you. Thank you. Your Honor, I'd like to quickly address the interpleader issue. The problem isn't that State Farm filed the interpleader. The problem is that State Farm completely abrogated its adjustment duties in the interpleader and got no protection by a covenant not to execute, a covenant not to sue, or a release for pageant while paying out all of his policy limits. We're talking about 1994 law. Under the law which existed at that time, State Farm was not under any obligation. In fact, it was under an affirmative duty to protect its insurer before paying out his policy limits. This goes back to Mr. Luck's argument regarding Waters and Ridley. Waters and Ridley specifically overruled, at least in the 1997 and 2000 case, Judiman, the Judiman case, which held specifically, and this is discussed at length in my briefs, that unless there's an offer to release, there is no offer of settlement, period. So we've got to deal with 1993 standards. I'd like to point out rather quickly that the argument I've raised dealing with a fundamental right in the Montana Constitution has never been addressed by the Montana Supreme Court or anybody else on the equal protection issue as a fundamental right in and of itself, and I think it's somewhat disingenuous just to dismiss it. I think Montana jurisprudence actually supports that. I want to point out that Burton had avulsed nerve roots, torn nerve roots out of his accident, and I think I'm running out of time. Oh, by the way, Minnesota Mutual is not applicable to this case. Thank you. You're asked for reversal. We thank both counsel in this case who submitted for decision. Next and final case on today's argument calendar is Wood v. Liberty Northwest, in turn. Thank you.
judges: Tashima, Paez, Bea